IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL SELLERS, as Personal Representative
of the Estate of Amber Sellers, Deceased,

      Plaintiff,

v.   No. 1:24-cv-00162-SMD-GBW

HUMANA INSURANCE COMPANY,

      Defendant.

### MEMORANDUM ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

**THIS MATTER** is before the Court on Defendant Humana's ("Humana's") motion for summary judgment, Doc. 69, and brief filed in support thereof, Doc. 70 ("Def.'s Mot. for SJ"), as well as Humana's motion to strike, Doc. 77 ("Def.'s Mot. to Strike"). Plaintiff Michael Sellers ("Plaintiff") responded to both motions, and Humana replied. *See* Doc. 74; Doc. 75 ("Pl.'s SJ Resp."); Doc. 78 ("Def.'s SJ Reply"); Doc. 80 ("Pl.'s Resp. to Def.'s Mot. to Strike"); Doc. 81 ("Def.'s Mot. to Strike Reply"). Upon review of the administrative record, the parties' filings, and the relevant law, the Court **DENIES** Humana's motion for summary judgment and **DENIES** its motion to strike as moot.

### STATEMENT OF MATERIAL FACTS

    I.    Factual Background

This case arises from Plaintiff's claim for benefits under Humana's Accidental Death and Bodily Injury policy following the death of his wife, Amber Sellers. The Court recounts the relevant facts based on the administrative record ("AR") (Doc. 61, Exs. 1–3), Humana's statement of undisputed material facts ("UMF"), Def.'s Mot. for SJ at 4–8 ("Def.'s UMF"), Plaintiff's

Response, Pl.'s SJ Resp. at 2–5 ("Pl.'s Resp. to Def.'s UMF"), Plaintiff's statement of undisputed material facts, *id.* at 5–8 ("Pl.'s UMF"), and Humana's response to Plaintiff's UMF, Def.'s SJ Reply at 2–4 ("Def.'s Resp. to Pl.'s UMF"). The Court notes that parties' most contentious disagreements—(1) whether the THC detected in Ms. Seller's bloodstream at the time of her accident means she was legally intoxicated and therefore excluded from accidental death benefits under the Plan and (2) whether Humana's role as the insurer and plan administrator undermines its decision to deny Plaintiff's claim—are immaterial to the summary judgment analysis. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Both questions relate to the merits of Plaintiff's benefits claim—an issue the Court does not reach—rather than his right to file suit in federal court. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008) (holding that courts afford an administrator's decision less deference if the plan administrator acts as both the insurer and the plan administrator). Accordingly, the Court does not delve into the parties' disagreements over these issues.

Amber Sellers, who was an employee of Humana Insurance and a participant in the Humana Multi Benefit Plan (the "Plan"), died in a car accident on November 19, 2022. Def.'s UMF ¶¶ 1–2; Pl.'s Resp. to Def.'s UMF ¶¶ 1–2. The Plan is an employer-sponsored welfare benefit plan, governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, which provides participants with various types of insurance coverage, including Accidental Death and Bodily Injury coverage. Def.'s UMF ¶¶ 2, 4–5; Pl.'s Resp. to Def.'s UMF ¶¶ 2, 4–5. Humana administers the Plan and has "sole discretionary authority to interpret the Plan to make eligibility and benefit determinations," as well as "the discretionary authority to make factual determinations as to whether any individual is entitled to receive any benefits under the Plan."

2

Def.'s UMF ¶¶ 6–7; Pl.'s Resp. to Def.'s UMF ¶ 7.[1]  The Plan excludes coverage for accidental death "resulting from . . . driving while legally intoxicated."  Def.'s UMF ¶ 8; Pl.'s Resp. to Def.'s UMF ¶ 8; AR 73.  Additionally, the Plan only covers loss resulting from the voluntary taking of a narcotic if a qualified practitioner prescribed such narcotic.  Pl.'s UMF ¶ I; Def.'s Resp. to Pl.'s UMF ¶ I.[2]

When EMTs arrived at the scene of Ms. Sellers' accident, they gave her two 50 microgram doses of fentanyl for pain.  Pl.'s UMF ¶ B; Def.'s Resp. to Pl.'s UMF ¶ B.  The toxicology report conducted after Ms. Seller's passing found fentanyl, delta-9 THC, and delta-9 carboxy THC in her system.  Pl.'s UMF ¶ C; Def.'s Resp. to Pl.'s UMF at 2.  Neither the toxicology report nor the police report found that Ms. Sellers was legally intoxicated when the accident occurred.  Pl.'s UMF ¶¶ E–F; Def.'s Resp. to Pl.'s UMF ¶¶ E–F.[3]

On December 20, 2023, Plaintiff filed a claim with Humana for all available benefits under the Plan.  Def.'s UMF ¶ 15; Pl.'s Resp. to Def.'s UMF ¶ 15.  Humana paid Plaintiff $334,000 for the Basic Life Insurance and Voluntary Life claims, pending his submission of reports.  Def.'s UMF ¶ 16; Pl.'s Resp. to Def.'s UMF ¶ 16.  Plaintiff then sent Humana a copy of the autopsy report, toxicology report, prehospital care report, and Ms. Sellers' medical cannabis card.  Def.'s UMF ¶ 17; Pl.'s Resp. to Def.'s UMF ¶ 17.

---

[1] Plaintiff agrees that this accurately reflects the language in the Plan document but "denies the quoted language is binding to the extent it conflicts with controlling law."  Pl.'s Resp. to Def.'s UMF ¶ 7.  Gripes over the legality of the Plan do not qualify as disputes over material facts.  *Beard v. Banks*, 548 U.S. 521, 529–30 (2006).

[2] Humana agrees that this accurately reflects the language in the Plan document but "disputes to the extent the language cited is not an exception to the exclusion relied upon by Humana in denying Plaintiff's claim and cannot reasonably read to permit driving under the influence."  Def.'s Resp. to Pl.'s UMF ¶ I.  Humana raises a question of legal interpretation and not a dispute over a material fact.  *Beard*, 548 U.S. at 529–30.

[3] Humana disputes this fact by asserting that Ms. Sellers "had delta-9-THC levels in her system" and then providing information about marijuana's general effects on the body.  Def.'s Resp. to Pl.'s UMF ¶ E.  Finding THC in an individual's blood is not equivalent to finding that they were legally intoxicated, and Humana's insinuation otherwise does not effectively dispute the reports.

On March 14, 2023, Humana denied Plaintiff's claim under the Accidental Death policy. Def.'s UMF ¶ 18; Pl.'s Resp. to Def.'s UMF ¶ 18. Humana stated that the reason for the denial was that the toxicology report revealed that Ms. Sellers had trace amounts of THC in her system at the time of the accident. Def.'s UMF ¶ 18; Pl.'s Resp. to Def.'s UMF ¶ 18.[4] Accordingly, Plaintiff was ineligible to recover benefits because the Accidental Death policies "do not cover driving while legally intoxicated" and "participating in a use of medical cannabis program by a qualified participant does not relieve individuals from liability arising out of operating a motor vehicle while under the influence of cannabis." *Id.* The claim denial informed Plaintiff that he had 180 days to appeal the administrator's decision and that he was required to exhaust his ERISA appeal rights before bringing a civil action. Def.'s UMF ¶ 19; Pl.'s Resp to Def.'s UMF ¶ 19.[5]

On July 3, 2023, Mr. Houliston, on behalf of Plaintiff, sent a letter to Humana entitled "Notice of Appeal." Def.'s UMF ¶ 20; Pl.'s Resp. to Def.'s UMF ¶ 20. The letter informed Humana that Mr. Houliston was Plaintiff's attorney and was representing him regarding his claim for benefits, included a written disclosure of health information referencing Ms. Sellers' medical records and conditions, and specified the basis for appeal. Pl.'s UMF ¶ P; Def.'s Resp. to Pl.'s UMF ¶ P; AR 221.[6] The Plan permits a claimant to designate a representative like Mr. Houliston "to act on his or her behalf in pursuing a benefit claim or appeal." Def.'s UMF ¶ 9; AR 15. "The designation must be explicitly stated in writing and it must authorize disclosure of protected health

---

[4] Plaintiff admits that Humana "denied the claim for the reasons stated in Material Fact No. 18," but "denies that those reasons were reasonable." Pl.'s Resp. to Def.'s UMF ¶ 18. Plaintiff expresses a difference of opinion, not a dispute of fact.

[5] Plaintiff agrees that this accurately reflects the language in the Plan document but "denies the quoted language is binding to the extent it conflicts with controlling law." Pl.'s Resp. to Def.'s UMF ¶ 7. This is a question of law. UMF Number 19 is therefore undisputed. *Beard*, 548 U.S. at 529–30.

[6] Humana agrees that this accurately reflects the letter it received from Mr. Houliston but disputes that "it meets Humana's requirements for an authorized representative or HIPAA's requirements to disclose claim records. Def.'s Resp. to Pl.'s UMF ¶ P. Humana raises a question of legal interpretation and not a dispute of material fact.

4

information with respect to the claim by the Plan, Humana, and the authorized representative to one another." AR 15. "The representative should also provide notice of commencement of the action on behalf of the claimant to the claimant, which Humana may verify with the claimant prior to recognizing the authorized representative status." *Id.*

Following receipt of Mr. Houliston's letter, Humana opened an appeal in its internal database and marked Mr. Houliston as Plaintiff's attorney. Pl.'s Resp. to Def.'s UMF ¶ 20; AR 223. Humana also responded to Mr. Houliston, "advis[ing] Plaintiff's counsel via letter that, pursuant to the Plan's terms, in order to process the request for counsel to act on Plaintiff's behalf in pursuing the appeal, Humana must have written authorization signed by Plaintiff." Def.'s UMF ¶ 21; Pl.'s Resp. to Def.'s UMF ¶ 21; AR 226. To fulfill this requirement, counsel could (1) complete the enclosed Appointment of Representation ("AOR") form or (2) send documentation confirming that Plaintiff had authorized counsel to act on his behalf. Def.'s UMF ¶ 22; Pl.'s Resp. to Def.'s UMF ¶ 22. Humana did not hear again from Plaintiff or his counsel. Def.'s UMF ¶ 24; Pl.'s UMF ¶ T. Humana subsequently closed the appeal as invalid. Def.'s UMF ¶ 25; Pl.'s Resp. to Def.'s UMF ¶ 25.[7]

II.   Procedural Background

Plaintiff originally filed suit in the County of Bernalillo, Second Judicial District, New Mexico, *see* Doc. 1, Ex. 1, naming Humana Insurance and Manhattan Life Insurance Company as defendants. Defendants removed the case to this district court in February of 2024, where it was assigned to the Honorable Margaret I. Strickland, *see* Doc. 11. Humana moved to dismiss Plaintiff's claims, Doc. 40, for failure to state a claim. Judge Strickland denied the motion. Doc.

---

[7] Plaintiff rebuts that neither he nor Mr. Houliston "received any notice or documentation from Humana indicating that the appeal was closed or deemed invalid." Pl.'s Resp. to Def.'s UMF ¶ 25. This is unresponsive to Humana's statement, which only asserts that the appeal was closed, not that Plaintiff or his counsel were contacted about it.

47 ("Order Denying Mot. to Dismiss"). On January 16, 2025, the case was reassigned to the undersigned. *See* Doc. 52. Humana then filed this motion for summary judgment. *See* Def.'s Mot. for SJ. Shortly thereafter, Defendant Manhattan Life Insurance settled its claims with Plaintiff and was dismissed from the case. *See* Doc. 76. Plaintiff responded to Humana's motion, including exhibits from outside the administrative record in his filing, *see* Doc. 75, Exs. 1, 2. Humana moved to strike those attachments. Def.'s Mot. to Strike at 2.

## LEGAL STANDARD

Summary judgment is appropriate where the evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Pitman v. Blue Cross & Blue Shield*, 217 F.3d 1291, 1295 (10th Cir. 2000) (quoting Fed. R. Civ. P. 56(c)). The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the non-movant can defeat summary judgment by showing that there is a genuine dispute of material facts. *Id.* A fact is material if it "might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The non-movant's response must "set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim." *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151 (10th Cir. 2006). The court then reviews the proffered evidence and, drawing all reasonable inferences in favor of the nonmoving party, determines whether "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

**DISCUSSION**

To obtain judicial review, ERISA beneficiaries must first exhaust their administrative remedies. *Whitehead v. Okla. Gas & Electric Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999). This rule is a creature of judicial, rather than legislative, creation. "[E]xhaustion of administrative remedies is an implicit prerequisite to seeking judicial relief . . . Any other procedure would permit premature judicial interference and would impede those internal processes which result in a completed record of decision making for a court to review." *Lane v. Sunoco, Inc. (R&M)*, 260 F. App'x 64, 65–66 (10th Cir. 2008) (internal citation and quotation marks omitted). Thus, in most cases, a claimant must complete each level of a plan administrator's internal review process prior to suing in federal court. *Id.* Still, the exhaustion doctrine is not absolute. A plaintiff's failure to exhaust administrative remedies may be waived in three limited circumstances—(1) when the administrative process would be futile; (2) when the remedy in the benefit plan is inadequate; or (3) when the claimant's failure to exhaust falls under the "deemed exhausted" exception. *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998); 29 C.F.R. § 2560.503-1(l). The third exception originates from ERISA's implementing regulations and enables a plaintiff to forego administrative remedies "if a plan has failed to establish or follow claims procedures consistent with the requirements of ERISA." *Holmes v. Colo. Coal. for Homeless Longterm Disability Plan*, 762 F.3d 1195, 1209 (10th Cir. 2014).

I.   Plaintiff Failed to Exhaust His Administrative Remedies.

To reach Plaintiff's central contention—that Humana's denial of benefits was arbitrary and capricious under the Plan's terms—the Court must first determine whether Plaintiff has either exhausted Humana's administrative review procedures or, if not, whether he is excused from failing to do so. The Court finds that Plaintiff did not exhaust his administrative remedies.

7

However, because Humana failed to comply with its regulatory duties, this failure is excused under ERISA's deemed exhausted exception. *See* 29 C.F.R. § 2560.503-1(l)(2)(i). Because the administrative record is underdeveloped, the Court remands Plaintiff's claim to the Humana administrator for further consideration.

    A. <u>Humana's signature requirement is reasonable and necessary.</u>

The Court first considers whether Humana's decision to reject Mr. Houliston's letter on the basis that it lacked Plaintiff's signature is valid. Plaintiff challenges the signature requirement as "extraneous and unnecessary," in violation of the Code of Federal Regulations' ("CFR") mandate that a plan "establish and maintain reasonable procedures governing the filing" of claims and appeals and not "preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal." Pl.'s SJ Resp. at 18 (citing 29 C.F.R. § 2560.503-1(b)(4)). Judge Strickland already dismissed this argument, *see* Order Denying Mot. to Dismiss at 11 n.5, and it fares no better in its second appearance. Requiring a signature ensures that only authorized representatives act on behalf of Plan beneficiaries and is necessary for the release of personal health information under HIPAA. *See* 45 C.F.R. § 164.508. Humana is well within its discretion as plan administrator to require a signature to validate authorization. *See Wilson v. United Healthcare Ins. Co.*, 27 F.4th 228, 248–50 (4th Cir. 2022).

    B. <u>Mr. Houliston's letter did not initiate an appeal, and Plaintiff took no further steps to obtain administrative review.</u>

Humana contends that Plaintiff did not exhaust his administrative remedies and, consequently, that this action is barred from proceeding. Def.'s Mot. for SJ at 9. Humana maintains that Plaintiff neither initiated an appeal on his own nor effectively initiated an appeal through an authorized representative. Def.'s Mot. for SJ at 10, 15 (citing Order Denying Mot. to Dismiss at 11). Plaintiff admits that Mr. Houliston's letter was likely insufficient to institute an

8

appeal, Pl.'s SJ Resp. at 16 ("[T]he Notice of Appeal letter *itself* may not have formally initiated the appeal."), but asks the Court to "consider the totality of the circumstances" and apply the doctrine of equitable estoppel to "avoid an unjust result." *Id.* at 15. In denying Humana's motion to dismiss, Judge Strickland concluded that it was "clear that the Notice of Appeal Letter did not initiate an appeal." Order Denying Mot. to Dismiss at 11. Nevertheless, dismissal was inappropriate since "Plaintiff could have taken any number of additional actions that are not revealed in the complaint." *Id.* Plaintiff now tries, and fails, to muster evidence of those "additional actions." Plaintiff opines that "it is clear that [he] exhausted remedies through (1) the Notice of Appeal Letter and Defendant's reactionary opening of an appeal entry in its database; (2) Humana's Response later; and (3) Humana's statement that the appeal was closed as invalid." Pl.'s SJ Resp. at 6. Plaintiff does not allege that Mr. Houliston made any attempt to contact Humana following the July 24th letter.

      The cumulative weight of these "other circumstances" is no greater than each event on its own. The first additional circumstance—the information included in Mr. Houliston's letter—is identical to the letter itself. *See id.* at 17 (discussing the "substantial information" included in Mr. Houliston's letter). Plaintiff's reliance on Humana's response letter is similarly forceless. Plaintiff argues that Humana's letter evinces "Plaintiff's efforts to engage in the administrative remedy process effectively advanced the proceedings." *Id.* at 19. But Humana's response only speaks to Humana's efforts; it says nothing of Plaintiff's. Humana's letter also did not further the appeals process. Humana simply informed Mr. Houliston that Plaintiff must either sign the authorization or submit an AOR form to perfect his appeal. AR 226. There was no suggestion that, absent these measures, Humana would consider Plaintiff's appeal. And, lastly, Humana's closing of the appeal was merely a reaffirmation of the letter's inadequacy.

Ultimately, Mr. Houliston's letter, Humana's response, and the closing of the appeal file prove the same fact three different ways—that Mr. Houliston tried unsuccessfully to initiate an appeal on Plaintiff's behalf. The Court therefore finds that Plaintiff made a singular attempt at appeal, which Humana squarely refused as procedurally deficient, and that Plaintiff therefore did not exhaust his administrative remedies. *See Getting v. Fortis Benefits Ins. Co.*, 108 F. Supp. 2d. 1200, 1202–04 (D. Kan 2000), *aff'd*, 5 F. App'x 833 (10th Cir. 2001); *L.E. v. Deseret Mut. Benefit Admins.*, Case No. 2:20-cv-0070-RJS-DBP, 2023 WL 4083381, at *7 (D. Utah. June 20, 2023) ("Under these circumstances, the court concludes [plaintiff] was required to submit the written statement contemplated by DMBA's May 19, 2020 letter to properly designate her counsel as an authorized representative, and thereby appeal DMBA's denial of her benefits. Because she failed to do so, the court agrees with DMBA's contention that she did not exhaust her administrative remedies as required under the Plan.").

II.  Plaintiff's Failure to Exhaust His Administrative Remedies is Excused Under ERISA's Deemed Exhausted Exception.

   A. <u>Plaintiff does not satisfy the futility exception.</u>

Plaintiff posits that even if the Court finds that he did not exhaust his administrative remedies, his failure is excused because doing so would have been futile. Pl.'s SJ Resp. at 20. "[T]he futility exception protects participants who are denied meaningful access to administrative procedures." *McCay v. Drummond Co.*, 509 F. App'x 944, 949 (11th Cir. 2013) (per curiam). "In order to meet the futility exception, [plaintiff] must show her claim would be denied on appeal, and not just that she thinks it is unlikely an appeal will result in a different decision." *Getting*, 5 F. App'x at 836; *see also Smith v. Local No. 25 Iron Workers' Pension Plan*, 99 F. App'x 695, 698 (6th Cir. 2004) ("[F]utility means that it is certain that the plaintiff's claim, after proceeding through the provided administrative remedies, would be denied."). A claimant's "bare assertion

10

that she does not think her appeal will be successful does not demonstrate futility." *Noren v. Jefferson Pilot Fin. Ins. Co.*, 378 F. App'x 696, 698 (9th Cir. 2010).

Plaintiff has not shown that his appeal would have been futile. The bulk of Plaintiff's futility argument relies on an analogy to *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998). In that case, the Tenth Circuit applied the futility exception because the plaintiff's claims were "belatedly processed and review delayed" and the administrator "failed to assess the plaintiff's individual circumstances." Pl.'s SJ Resp. at 20 (citing *McGraw*, 137 F.3d at 1264). The record was littered with examples of the company's malfeasance in responding to plaintiff's appeal; the administrator repeatedly failed to review the plaintiff's claim within the prescribed time limit and confusingly alternated between sending its explanation of benefits to the plaintiff, her physician, and her attorney. 137 F.3d at 1264. The facts of *McGraw* do not mirror, or even come close to, those presented here. Plaintiff has not proffered any evidence that appeal would be "certain" to yield the same result or that he was unable to effect an appeal despite repeated efforts to do so. Instead, Plaintiff depends on a bare-bones assertion that appeal would have been futile. Pl.'s SJ Resp. at 20. That conviction is insufficient to excuse a claimant's failure to exhaust their administrative remedies. *Getting*, 5 F. App'x at 836. The Court therefore finds that the futility exception does not salvage Plaintiff's suit.

B. <u>Plaintiff satisfies the deemed exhausted exception.</u>

The Court now considers whether Plaintiff's failure to exhaust is excused under the "deemed exhausted" exception. 29 C.F.R. § 2560.503-1(l). "If a plan fails to establish and follow reasonable claims procedures, the claimant is deemed to have exhausted the administrative remedies available under the plan and is entitled to bring a civil action on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of

the claim." *Holmes*, 762 F.3d at 1209 (internal quotation marks omitted). "The Act generally imposes broad fiduciary responsibilities on plan trustees, requiring them to perform their obligations with diligence and to discharge their duties solely in the interest of plan participants and their beneficiaries." *Wilson*, 27 F.4th at 249 (internal quotation marks and citations omitted). As part of these duties, ERISA plan administrators must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied and afford a reasonable opportunity for a full and fair review of the decision denying the claim." *Id.* at 1208 (citing 29 U.S.C. § 1133) (internal marks omitted). The Tenth Circuit has interpreted these regulations as mandating that ERISA plan administrators have "a full and meaningful dialogue" with claimants about the denial of benefits. *D.K. v. United Behav. Health*, 67 F.4th 1224, 1239–40 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 808 (2024); *David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1313 (10th Cir. 2023). Of course, not every misstep is enough to trigger the deemed exhausted exception; the oversight must have some prejudicial impact on the vindication of the claimant's rights. *See Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 636 (10th Cir. 2003).

Plaintiff avers that the deemed exhaustion applies because Humana declined to provide him with "written communication regarding the appeal to Plaintiff . . . though it has proffered that appeal was deemed invalid and closed." Pl.'s SJ Resp. at 22. Humana resists the extension of the CFR's notice provisions to the present scenario. *See* Def.'s Reply at 7 ("Plaintiff mistakenly believes Humana's closure of the appeal as invalid was an adverse benefits determination entitling him to notification."). In Humana's view, its duty to provide written notice of a denial kicks in when an adverse benefit determination is issued. Because Plaintiff did not initiate an appeal, no adverse determination was made, and ERISA's written notice requirements were impertinent.

The Court finds Humana's interpretation to be too narrow. Humana must "establish and

12

maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1).  If an administrator "believe that more information is needed to make a reasoned decision, they must ask for it." *Rasenack ex rel. Trbiolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1326 (10th Cir 2009); *see also* 29 C.F.R. § 2560.503-1(g) (a plan administrator must inform a claimant of any "additional information needed" for the claimant to perfect his claim).  Humana cannot avoid these responsibilities by declining to review Plaintiff's appeal based on procedural technicalities rather than reach the merits of his claim.  *Cf. Gilberston*, 328 F.3d at 636 (finding insurer failed to participate in a meaningful dialogue with claimant where it "simply sat on the claim until well after it was automatically deemed denied by operation of ERISA regulations").  Plaintiff was entitled to a "good faith exchange of information" and a meaningful opportunity to correct his appeal, even though it was not an adverse benefits determination on the merits.  *Stephanie C. v. Blue Cross Blue Shield*, 813 F.3d 420, 426 (1st Cir. 2016) (explaining that a plan administrator must "clearly communicate the reason for its actions").

The Court finds that Humana neglected to have a "full and meaningful dialogue" with Plaintiff or "provide adequate notice" about the designation's deficiencies.  Driving this conclusion is Humana's paradoxical decision to at once reject Mr. Houliston as Plaintiff's authorized representative yet only communicate with him regarding the signature requirement.  *See* Pl.'s SJ Resp. at 20 ("Humana never informed Plaintiff that the appeal had been deemed invalid or closed, despite its position that no one else was authorized on Plaintiff's behalf."); Def.'s Mot. for SJ at 15 (explaining that Humana "promptly notified Plaintiff's *counsel* that the Notice of Appeal was insufficient" (emphasis added)).  In its motion, Humana justifies its need for Plaintiff's signature as follows: "Humana cannot simply take the word of a third party (especially one it has never dealt

13

with) that it is 'authorized' on behalf of a participant or beneficiary." *Id.* at 14. Accepting that principle as true, it is untenable that Humana's duty to "provide adequate notice" would lie with the unconfirmed representative rather than with the beneficiary. Indeed, the Plan states that if Humana doubts a representative's status, it "may verify" the commencement of an action on the beneficiary's behalf "*with the claimant* prior to recognizing the authorized representative status." AR 14 (emphasis added). Again, the Court finds no issue with Humana requiring a signature to confirm an authorized representative's status. But if that signature is the difference between effecting review of a claim denial and not, Humana must take some affirmative step to inform the *claimant* of this requirement. It is the claimant whose rights are at stake and the claimant who Humana has a duty to pay. Def.'s Mot. for SJ at 14 (defending signature requirement on the basis that Humana "has a duty to only pay and settle claims with the intended recipient"). This step is particularly critical since the Plan documents do not mention a signature for designating an authorized representative. *See* AR 15. Without sufficient notice of Humana's procedural requirements, Plaintiff was "put at a distinct disadvantage in understanding how to proceed." *Wilson*, 27 F.4th at 246–47; *see also Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846–47 (11th Cir. 1990) ("When a plan administrator in control of the available review procedures denies a claimant meaningful access to those procedures, the district court has discretion not to require exhaustion."); *cf. Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1280 (5th Cir. 1990).

The Court is further persuaded by the court's reasoning in *L.E. See* 2023 WL 4083381. In that case, the court excused a claimant's failure to exhaust and partially denied summary judgment because the company neglected to "dispel [plaintiff's] notion that she was represented by counsel, and therefore her appeal would proceed." *Id.* at *9. The court explained that although a plan

14

administrator is entitled to "establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant, this grant of discretion does not allow plan administrators to cast aside other regulatory obligations because of a claimant's failure to achieve procedural perfection." *Id.* at *10. Unlike the present case, the plaintiff in *L.E.* "submitted a form giving her counsel broad access to her medical records" at the insurer's request, and after counsel had attempted to file an appeal. *Id.* However, the insurer in *L.E.* "directly contact[ed]" the plaintiff.[8] *Id.* Humana did not make comparable strides to communicate with Plaintiff. The court went on to explain that, without diligent communication, "one could envision an analogous situation where a claimant requests an administrative appeal, but the submission suffers from a procedural defect, such as a missing signature or birthdate, or even use of an outdated form . . . But rather than alert the claimant of her continued noncompliance, the plan administrator simply allows the clock to run on the claimant's meaningful window." *Id.* That hypothetical has been realized here. Humana did not "alert [Plaintiff] of [his] continued noncompliance" and now, more than 180 days after it denied Plaintiff's claim, it attempts to foreclose any further administrative review.

The Fifth Circuit's recent decision in *Angelina Emergency Med. Assocs. PA v. Blue Cross & Blue Shield of Ala.*, __ F.4th __, 2025 WL 2984898, at *11 (5th Cir. Oct. 23, 2025) also militates against granting summary judgment. There, the Fifth Circuit excused a physician group's failure

---

[8] Humana argues that the present case hews more closely to *C.L. ex rel. of H.L. v. Newmont USA Ltd.*, No. 2:18-cv-00192, 2020 WL 3414807 (D. Utah. June 22, 2020), than it does to *L.E.* Def.'s Mot. for SJ at 15–16. Although *C.L.* shares certain qualities with this case—namely the insurer's denial of an appeal initiated without proper authorization—Humana ignores that the insurer in *C.L.* contacted the claimant. 2020 WL 3414807 at *2. Instead of grappling with this distinction, Humana insinuates that its actions mirrored those of the insurer in *C.L.* "As here, the plan plaintiff by letter after receiving the provider's notice of appeal . . ." Def.'s Mot. for SJ at 16. But Humana's own narrative discredits the notion what happened in *C.L.* is the same "as here." Humana states that it "promptly notified Plaintiff's *counsel* that the Notice of Appeal was insufficient" and "then provided Plaintiff's *counsel* with the AOR form for completion and signature as authorization." *Id.* at 15 (emphasis added). This factual difference makes *C.L.* of little use in determining the present motion.

15

to exhaust administrative remedies after the group "requested the underlying plans," but were not "referred to the proper channels" nor directed "toward the actual appeals process." *Id.* "The Blue Plans proffer a circular argument. They argue that the Physician Groups should have used the member appeals process contained in the underlying plan, even though the Physician Groups did not have the underlying plan and requested a copy from the Blue Plans using the provider appeals process. But the Blue Plans failed to provide a copy of the underlying plan through the provider appeals process because the Physician Groups should have used the member appeals process contained in the underlying plan." *Id.* The court then vacated the district court's grant of summary judgment, holding that there was a "factual dispute as to whether the Physician Groups could have discovered the member appeals process without action taken by BCBSTX." *Id.* Asking a purportedly unauthorized representative to obtain the signature of someone they may not represent, while neglecting to contact the beneficiary themselves, creates a similarly illogical process. Thus, as in *Angelina*, there is a genuine dispute as to whether Plaintiff could have remedied his improper designation of Mr. Houliston without any communication from Humana. *Cf. Curry*, 891 F.2d at 846 ("Until [plaintiff] could obtain plan documents describing what remedies the plan made available and documenting the reasons that his claim had been denied, he was refused meaningful access to those procedures.").

The Court acknowledges that this case presents a close call; neither Plaintiff nor Humana diligently pursued their duties. The outcome would likely be different had Humana contacted Plaintiff even once following Mr. Houlston's letter. However, because summary judgment is construed in favor of the non-moving party, and ERISA obligates the plan administrator to ensure that claims procedures are clearly communicated to beneficiaries, the scales tip in Plaintiff's favor. *See Reazin v. Blue Cross & Blue Shield*, 899 F.2d 951, 979 (10th Cir. 1990). The Court concludes

that Plaintiff's administrative remedies are deemed exhausted under 29 C.F.R. § 2560.503-1(l). The Court will not, however, consider the merits of Humana's decision to deny Plaintiff's claim. The administrative the record is incomplete, and judicial interference would be premature. *Lane*, 260 F. App'x at 66. The appropriate remedy is remand. *Messick v. McKesson Corp.*, 640 F. App'x 796, 799 (10th Cir. 2016); Def.'s Reply at 12 ("[S]hould Humana not be entitled to summary judgment, remand is appropriate."); Pl.'s SJ Resp. at 23.

    III.    **Humana's Motion to Strike is Denied Because the Court Does Not Reach the Merits of Plaintiff's Claim.**

The Court denies Humana's motion to strike as moot. Rule 12(f)(2) permits the Court to strike from a pleading any matter which is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P.(f)(2). Humana is correct that "in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010) (citation omitted). However, the Court has no occasion to consider Plaintiff's extra-record materials because it does not reach the merits of the administrator's decision. Humana's motion to strike, Doc. 77, is therefore denied.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment is **DENIED**. Defendant's motion to strike is **DENIED** as moot. Plaintiff's claim is **REMANDED** to the Humana administrator for evaluation.

 

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**